UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE WRIT OF HABEAS CORPUS MATTER OF:

WALTER HOWARD, PRO SE.
PETITIONER.

vs.

ROBERT MURPHY, SUPERINTENDANT,
TREATMENT CENTER.
RESPONDENT.

## MOTION FOR TOLLING OF TIME LIMITS AND FOR COURT ORDER EXEMPTING PETITIONER FROM LIMITS

Now comes the petitioner, Walter Howard pro se, who respectfully requests that this honorable court exclude this petitioner from all time limits established in the EDPATA while considering this petition for writ of habeas corpus for the following reasons:

1) The EDPATA was enacted after the effective date of this petitioner's original criminal convictions.

2) The petitioner was was/is mentally ill, and had been throughout his criminal prison term, to such a degree that he was unable to recognize the miscarriages of justice in his case, and was unable to act, effectively, to have his claims of injustice addressed by the courts, due to his being diminished in capacity by inappropriately prescribed mind altering drugs in the original criminal proceedings, as well as throughout his prison term.

3) Attornies assigned to this petitioner REFUSED to address his issues as he desired, and as a result, he was adjudicated in a prejudicial manner, denied proper due process, equal protection, and his right to appeal, by the commonwealth, his counsels, and due to his diminished mental condition, were withheld.

Wherefore, this petitioner prays that this honorable court will suspend any time limits that may exist to undermine his ability to seek a reversal of his unconstitutional/illegal 1992 criminal convistions. Signed under the penalties of purjury this 25th day of November, 2004.

Walter Howard, Pro Se.
30 Administration Rd. 02-11
Bridgewater, Ma. 02324

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF A WRIT OF HABEAS CORPUS PETITION

WALTER HOWARD, PRO SE.
PETITIONER.

vs.

ROBERT MURPHY, SUPERINTENDANT,
TREATMENT CENTER,
RESPONDENT.

## MOTION FOR APPOINTMENT OF COUNSEL FOR INDIGENT AND MENTALLY ILL CITIZEN IN STATE CUSTODY

Now comes the petitioner, Walter Howard pro se, who respectfully requests this honorable court appoint counsel to represent him in his petition for writ of habeas corpus pusuant to 28 USC 2254 matter. The petitioner is a severley mentally ill (major depressive illness) patient who: 1) was given ineffective assistance of counsel, 2) was diminished in capacity by mental illness and mind altering drugs during his original plea bargain proceedings, 3) was denied protections of certain constitutinal rights by counsel and the criminal court, 4) was so diminished in caoacity by mind altering drugs for such a long time that he was unable to act to protect his own rights prior to his 1992 convictions, and remains mentally ill with severe depression, 5) was denied effective assistance by appellate counsel who refused to act in his clients best interests and comply with specific wishes of the client, and 6) was denied a right to appeal certain issues with the court, by counsel and the court wishing to expidite case flow.

Since this petitioner suffers from major depressive illnes, he is unable to represent himself to a degree that will make his efforts likely to succede, even with the merits of his claims being

as strong as they are.  The petitioner has experienced nothing but futility in his attempts to seek justice in the commonwealth of Massachusetts, and he has been appointed attornies who work only to satisfy minimum professional rules and standards.

Wherefore, this petitioner respectfully moves this honorable court to appoint a qualified, competent, and respectful counsel who will act to protect this petitioner's rights with integrity and all due diligence.

Respectfully Submitted,

Walter Howard, pro se.
30 Administration rd. D2-11
Bridgewater, MA.  02324.
11/25/04

2

EXHIBIT

tabbies  Suppliment

**EDWARD B. GAFFNEY, ESQ.**
**P.O. Box 5092**
**Wayland, MA  01778**
**(508) 358-4818**

December 17, 2001

Walter Howard
30 Administration Road
Bridgewater, MA  02324

Dear Mr. Howard:

At long last, enclosed please find a draft of a motion for new trial (to withdraw guilty pleas) in your case.  Please review it, and give me your thoughts.

Please note that I will be filing a copy of the transcripts of the plea hearing at the same time as the motion.  Please further note that the filing will be done in Middlesex, but a copy of the filing will be sent to Judge Bohn, wherever he is sitting, because according to the rule, as the judge who took the plea, he is responsible for ruling on the motion.

Finally, I have a memory that you wanted to make the claim that because you were under the influence of medication, you did not make your plea knowingly and voluntarily.  I recommend that you don't make such an argument, because the transcript of the hearing appears to support the position that you were very involved in the entire proceeding.  You asked and answered questions appropriately, and you took an active part throughout the hearing.  Such a claim might undermine what I believe to be the stronger claims that the colloquy was constitutionally inadequate.

Please accept my best wishes for a happy and healthy holiday season and new year.

Very Truly Yours,

Edward B. Gaffney

EXHIBIT

*Suppliment*

COMMONWEALTH OF MASSACHUSETTS

MASSACHUSETTS APPEALS COURT

MIDDLESEX                                APPEALS COURT NO: 03-P56

COMMONWEALTH OF MASSACHUSETTS

vs

WALTER HOWARD

## MOTION FOR TEMPORARY STAY

Now comes the defendant/appellant in the above entitled matter, pursuant to M.R.App.P. 6, and hereby moves this Honorable Court to stay his appeal. As grounds hereof, the defendant/appellant says that his Motion for a New Trial and appeal are lacking certain critical issues which are necessary for a full and fair adjudication of his claims. Further, the defendant/appellant says that he expressly requested that counsel include these issues and counsel has failed and refused to present them for consideration. The defendant/appellant further relies upon his attached Affidavit in Support of his Motion to Stay Appeal.

WHEREFORE, the defendant/appellant moves this Honorable Court to ORDER that the instant appeal be stayed pending the filing and adjudication of his Motion for Reconsideration in the Superior Court Department.

Respectfully Submitted,

Date: _august 23rd, 2003_

_Walter Howard_

Walter Howard, pro se
30 Administration Road
Bridgewater, MA 02324

Exhibit K₁

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

APPEALS COURT
NO. 03-P-56

COMMONWEALTH OF MASSACHUSETTS

VS.

WALTER HOWARD

APPELLANT'S AFFIDAVIT IN SUPPORT OF
MOTION FOR TEMPORARY STAY OF PROCEEDINGS

Now comes the defendant/appelant who hereby makes this affidavit in support of his motion for temporary stay of proceedings for his appeal for new trial under Rule 30(b). Further, the defendant/appelant says :

1) My name is Walter Howard, and I am the defendant/appelant in the above captioned matter on appeal.

2) On November 25th, 1992, while over medicated by mind altering drugs, I was advised by counsel who misrepresented the terms of a plea agreement and sentence to change my plea to guilty.

3) Counsel was aware that shortly after my arrest on numerous sex related charges, I admitted myself to a psychiatric hospital for major depressive illness and suicidal ideation. Counsel was also aware that I had a long history of Major Mental Illness.

4) While hospitalized for major depressive illness, I was indicted by the Middlesex County Grand Jury for numerous sex related offenses soley by hearsay testimony. Counsel failed to challenge the presentation and sufficiency of the hearsay testimony offered.

5) I was never served a copy of the indictments which would have notified me of the nature, extent, and essential elements of the charges. As a result, I was unable to return service. In addition, Counsel failed to explain to me the essential elements of the crimes I was charged with.

6) Counsel also failed to explain to me that 'lack of consent' was an essential element for the majority of offenses I was charged with. Had this essential element been properly explained to me, I would not have changed my pleas to guilty as I did.

The motion to stay was denied by the appeals court, but my original Rule 30b motion caused 5-1992 convictions to be reversed. An F.A.R. has been Filed.

Exhibit K2

7) Just after my release from the psychiatric hospital, several Lowell Police Officers falsely alledged that I had made a bomb threat against an officer's home. I believe the reason for this was to have my pre trial probation revoked, and to have me jailed. I never made any bomb threats to anyone, and this behavior would have been completely against my behavioral history.

8) While in the Cambridge Jail awaiting trial, a Doctor prescribed 'three times' the medication that my personal Psychiatrist prescribed, and because this Doctor over prescribed mind altering drugs for me prior to proceedings, my ability to appreciate my circumstances and how to proceed was greatly diminished. As a result of this, I was unable to make decisions autonomously, and was forced to rely on the defective advice of others. At no time did counsel discuss defense strategies with me.

9) After being mal advised to tender a plea of guilty for numerous crimes I did not commit, during the colloquy, I was taken aback by the inclusion of offenses that were not presented in the falsely premised plea agreement offered through counsel. These additional offenses included 'assault with intent to rape a child, and rape of a child under 16.' I was a cooperative/compliant participant in the proceedings due to my fear and the 'mind altering effects' of the over prescribed mind altering drugs.

10) Because of the impairment by the over prescribed mind altering drugs, I was incapable of fully comprehending the allegations as they were made. The dates recited for the alledged offenses to have occured were wrong, and more importantly, the dates of birth of several of the alledged victims were mis stated by the prosecutor. Because of my diminished capacity, I wasn't sharp enough to pick up on the subtle errors that made the allegations more egregious under the law. Additional convictions not included in the plea agreement offer were added to the final convictions.

11) At no time was I involved with or included in the plea negotiations. I was simply advised by counsel that he was trying to get [me] a deal. In this regard alone, I was not aware of the actual terms offered for the plea agreement, and certainly wasn't able to discover 'essential elements' of the crimes charged on my own.

12) During the recitation of allegations by the prosecutor, I denied elements essential for a conviction for the crimes alledged to be valid. Due to my being diminished in capacity by mind altering drugs during the proceedings, particularly the sedative effects of 15mg of Stelazine, 150mg of Anafranil, and an unknown dose of Klonopine, my disputes went unresolved, and as a result, my plea change to guilty were changed to guilty for numerous offenses I did not commit. All I wanted to do during the proceedings was return to my cell and sleep forever. I didn't care about anything at that point in time. Counsel not only failed to warn me against self incrimination, but also failed to properly explain the mitigating circumstances or present exculpatory evidence to the court.

Exhibit "K₃"

13) During my entire term of incarceration, I was maintained on mind alter-
ing drugs that were over prescribed. This significant fact not only kept
me sleeping through an entire prison term, but it kept me from discover-
ing the injustices done to me by counsel, the prosecutor, and unknowing-
ly, the court. There was a limited period of time that I stopped taking
the mind altering drugs and was able to recognize that injustice did in
fact occur. I then sought to have my attorney file a revise and revoke
addressing all of my concerns presented in this affidavit, but the revise
and revoke was denied. I was not allowed to be prsent at the revise and
revoke hearing, and therefore, was unable to properly know the details
of the preceedings concerning my life. I was kept mentally malleable.

14) It wasn't until after I was petitioned under MGL.ch.123A that I was able
to learn of the extent of the damages/injustice done to me by all
parties relevant. For this reason, along with my being diminished in
capacity for over nine years by mind altering drugs, I was unable to
correct the false and misleading record, and take whatever steps were
necessary to protect and preserve my rights.

15) As of this date; after numerous attempts through various counsel, the
issue of my pleading guilty while diminished in capacity by mind alter-
ing drugs rendering me unable to make autonomous decisions, has not been
properly presented to the court. There was no way that I had the capacity
to knowingly and voluntarily enter into a plea agreement I could not
fully comprehend.

16) For the above stated reasons, and those presented by my Rule 30 (b)
appeal councel in my motion for a new trial, I seek to correct these
errors.

Signed under the pains and penalties this 23ʳᵈ day of August, 2003.

Walter Howard, pro se.
30 Administration Road
Bridgewater, Ma. 02324

COMMONWEALTH OF MASSACHUSETTS

**APPEALS COURT**
**CLERK'S OFFICE**
Three Center Plaza, Seventh Floor
BOSTON, MASSACHUSETTS 02108
(617) 725-8106

September 3, 2003

Walter Howard
Bridgewater Treatment Center
30 Administration Road
Bridgewater, MA 02324

RE:    No. 2003-P-0056

**COMMONWEALTH**
        **vs.**
**WALTER HOWARD**

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the MOTION to stay, filed by Walter Howard. (Paper #7),

on September 3, 2003, the following order was entered on the docket of the above-referenced case:

RE#7: Upon consideration of the motion for a stay, counsel for the appellant is, by 9/17/03, to either file a similar motion in this court on appellant's behalf, or to file a statement consistent with Commonwealth v. Moffet, 383 Mass. 201 (1981), that he has no intention to do so. (McHugh, J.) *Notice/Walter Howard.

                        Very truly yours,

                        The Clerk's Office

Dated: September 3, 2003

To:  James W. Sahakian, A.D.A.
     Walter Howard
     Edward B. Gaffney, Esquire

Rec'd 9/5/03

K

COMMONWEALTH OF MASSACHUSETTS

**APPEALS COURT**
**CLERK'S OFFICE**
**Three Center Plaza, Seventh Floor**
**BOSTON, MASSACHUSETTS 02108**
**(617) 725-8106**

September 19, 2003

Walter Howard
Bridgewater Treatment Center
30 Administration Road
Bridgewater, MA 02324

RE:    No. 2003-P-0056

**COMMONWEALTH**
**vs.**
**WALTER HOWARD**

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the MOTION to stay,
filed by Walter Howard. (Paper #7),

on September 19, 2003, the following order was entered on the
docket of the above-referenced case:

REVISED ACTION RE#7: After review of the within and of paper #8,
Attorney Gaffney's Moffett statement, the motion to stay is
denied. My denial is based solely on my assessment of appropriate
case flow and has nothing whatsoever to do with the merits of any
issue the defendant seeks to raise. *Notice/Walter Howard.

Very truly yours,

The Clerk's Office

Dated: September 19, 2003

To:  James W. Sahakian, A.D.A.
     Walter Howard
     Edward B. Gaffney, Esquire

*rec'd Sept 23, 2003*

COMMONWEALTH OF MASSACHUSETTS

**APPEALS COURT**
**CLERK'S OFFICE**
Three Center Plaza, Seventh Floor
BOSTON, MASSACHUSETTS 02108
(617) 725-8106

September 26, 2003

Walter Howard
Bridgewater Treatment Center
30 Administration Road
Bridgewater, MA 02324

RE:     No. 2003-P-0056

**COMMONWEALTH**
**vs.**
**WALTER HOWARD**

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the Protest of
actions by his attorney, filed by Walter Howard (pro se). (Paper
#9),

on September 26, 2003, the following order was entered on the
docket of the above-referenced case:

RE#9: Treating the within as a motion to reconsider, I have
reconsidered and reach the same result. The order of 9/19/03 on
paper #8 is to stand. (McHugh, J.) *Notice/Walter Howard.

Very truly yours,

The Clerk's Office

Dated: September 26, 2003

To:  James W. Sahakian, A.D.A.
     Walter Howard
     Edward B. Gaffney, Esquire

EXHIBIT

tabbies

_____

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

03-P-56

COMMONWEALTH

vs.

WALTER HOWARD.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 1:28</u>

The defendant pleaded guilty to three counts of rape of a child, eight counts of indecent assault and battery on a person fourteen or older, and four counts of assault with intent to rape a child, for offenses involving a total of nine victims. More than nine years later, with the specter of involuntary commitment as a sexually dangerous person looming,[1] he filed a motion to withdraw his guilty pleas,[2] which was denied by the same judge who had accepted the defendant's pleas. On appeal, the defendant argues that (1) he was never informed that he was waiving certain rights; and (2) he did not plead guilty intelligently, because he was never informed of the elements of the crimes to which he was pleading.

_____

[1] See G. L. c. 123A.

[2] The defendant moved to withdraw all of his guilty pleas, but offered no argument with respect to one of the counts of rape of a child and one of the counts of indecent assault and battery on a person fourteen or over. Any claim that these pleas were infirm is now waived. See <u>Commonwealth</u> v. <u>Colon-Cruz</u>, 408 Mass. 533, 537 n.2 (1990).

1. <u>Knowledge of rights and sentences</u>.  The defendant claims he was not informed (a) that he had a right to present evidence on his own behalf; (b) that he was waiving his right against self-incrimination; and (c) of the minimum and maximum penalties for the charged crimes.[3]  As to the defendant's waiver of the right to present evidence on his own behalf, we first note that Mass.R.Crim.P. 12(c), as amended, 399 Mass. 1215 (1987), does not require that such notice be given.  Nor, in these circumstances, has the defendant demonstrated that the giving of such notice would have caused him not to plead guilty.  This is especially so in light of the judge's explanation of trial procedure, the sheer breadth of the plea hearing (which consumes fifty-eight pages of transcript), and the defendant's failure to file an affidavit.

A similar analysis applies to the failure to advise the defendant of his waiver of the right against self-incrimination. It is true that rule 12 requires that this warning be given. However, the failure so to advise a defendant is not fatal to his plea.  See <u>Commonwealth</u> v. <u>Rodriquez</u>, 52 Mass. App. Ct. 572, 580 (2001) ("We will not assume that the defendant's plea was involuntary and unknowing and say as a matter of law that justice was not done simply because the record reflects noncompliance

_____

[3] The defendant also claims error in the judge's not having advised him that he was waiving his right to appeal a denial of a motion to suppress.  This claim is frivolous.  The defendant never filed a motion to suppress, nor is there any suggestion that he was inclined to do so.

2

with rule 12"). It is apparent from the tenor of the plea hearing that the defendant wished to plead guilty and received a favorable sentence for doing so. For the defendant now to suggest -- again, he has not bothered to file an affidavit specifically averring such -- that had he been so informed, he would not have pleaded guilty, is at best questionable. That being the case, the judge acted within his discretion in denying the defendant's motion.

With respect to the defendant's alleged ignorance of the minimum and maximum penalties for the offenses to which he was pleading, it is worth noting that the defendant made clear he knew what sentences would be imposed. While he nonetheless should have been told of the minimum and maximum possible sentences, the fact that he pleaded guilty, with knowledge of the sentence he would receive, and moved to withdraw his guilty plea more than nine years later after the initiation of sexually dangerous person proceedings, speaks loudly to the fact that the defendant's alleged lack of knowledge of the minimum and maximum sentences made no difference in his decision to plead guilty.

2. <u>Knowledge of elements of offenses</u>. The defendant next claims that his plea was not intelligently made because he was unaware of the elements of the crimes to which he pleaded guilty. See <u>Commonwealth</u> v. <u>Correa</u>, 43 Mass. App. Ct. 714, 717 (1997) (requirement that plea be made intelligently "can be satisfied in

3

one of several ways:   (1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that she has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements").  Analysis of the defendant's contention requires some parsing of the offenses in question.

(I).  <u>Rape of a child</u>.  The defendant claims two of his three guilty pleas to rape of a child were not valid.  Pertaining to indictment number 91-3921-002, the defendant claims he did not admit to the element that the child be under the age of sixteen.  However, the indictment read that the defendant "did have natural or unnatural sexual intercourse with [the victim] a child under the age of sixteen."  (R. 20)  Further, in the factual recitation, the prosecutor gave the victim's birthday as August 22, 1974 (a fact the defendant did not contest).  The prosecutor then indicated the rape in question took place "during the spring through the fall of 1990."  (R. 64)  The defendant claims that, based on the prosecutor's recitation, the rape <u>could</u> have occurred in the fall of 1990, and if that were the case, the victim would have been sixteen years old by that time, and therefore the defendant's guilty plea to rape of a child was not valid.  But while the date of the rape may have been a possible defense at trial, it is a defense the defendant waived by his

4

choice to plead guilty.  Cf. Commonwealth v. Robbins, 431 Mass.
442, 452 (2000); Commonwealth v. Rodriguez, 17 Mass. App. Ct.
547, 556 (1984) ("a guilty plea waives all but jurisdictional
defects"), quoting from Commonwealth v. Snyder, 12 Mass. App. Ct.
960 (1981).  Certainly, it is a reasonable and likely inference
that the rape took place prior to August 22, 1990 (the victim's
sixteenth birthday).  For the purposes of a guilty plea, nothing
more is required.

     The defendant makes a similar argument as to indictment
number 92-615-001.  He claims that because he admitted to a rape
that occurred "during 1988," and insisted that "it had to be in
1988,"[4] and then expressed doubt that it happened before December
8, 1988 -- another victim's sixteenth birthday -- he did not
admit to facts establishing that that victim was under the age of
sixteen.  This argument is without merit because, even if the
defendant's suggestion that he never actually admitted to the
necessary date is believed, the fact that the judge, the
prosecutor, defense counsel, and the defendant discussed the date
of the offense and its relevance to the crimes charged
establishes that the defendant knew the disputed element -- that
the victim was under the age of sixteen at the time of the rape.
See Commonwealth v. Correa, supra.

---

     [4] A few lines of transcript earlier the defendant
acknowledged the possibility that the offense could have occurred
in 1987.

(ii).  <u>Indecent assault and battery on a person fourteen or older</u>.  The defendant challenges seven of his eight guilty pleas to indecent assault and battery on a person over the age of fourteen.  With respect to six of the seven indictments, the defendant asserts that the facts to which he admitted did not involve a lack of consent by the victims.  See <u>Commonwealth</u> v. <u>Burke</u>, 390 Mass. 480, 484 n.4 (1983) ("Nonconsent is an element of the crime of indecent assault and battery on a person who has attained the age of fourteen").  As to the seventh indictment (number 91-3921-007), the defendant argues that not only was the absence of consent not discussed, but also he never admitted to an "indecent" touching.

Beginning with indictment 92-615-003, the prosecutor recited that, in addition to orally raping the victim, the defendant at varying times would touch the victim on his thighs and penis.  The defendant gave the victim money during this period.  Other than a disagreement over the date of the offenses, see discussion pertaining to indictment 92-615-001, <u>supra</u>, the defendant did not dispute this recitation, saying only, "I'm just sorry it happened."  (R. 59)  No absence of consent was mentioned.

Regarding indictments 91-3921-009, 91-3921-011, and 91-3921-012, the defendant admitted that he would "grab" the victims' buttocks and/or penises over their clothing on numerous occasions.  (R. 61-64)  Again, there was no statement or

6

admission concerning the absence of consent.

The defendant must be allowed to withdraw his guilty pleas as to these four indictments. Simply stated, the prosecutor did not state, nor did the defendant admit that the victims did not consent to the indecent touchings. There was no other explanation during the colloquy that lack of consent is an element.[5] Therefore, those guilty pleas were not intelligently made.

Regarding indictment 91-3921-007, the prosecutor stated that the defendant "grabbed and squeezed [the victim's] penis. During this time [the victim] stated that he was afraid of the defendant and did not want the defendant to touch him in any way." (R. 71) The defendant, however, stated that all he had done was tickle the victim. (R. 73) The defendant later admitted this tickling was conducted with the thought that it would bring about a "sexual relationship." (R. 84) See discussion of indictment 91-3921-005, infra.

This admission by the defendant falls short of an admission to indecent assault and battery. Even assuming that tickling in

_____

[5] It is true that in the recitation pertaining to indictment 91-3921-008, the prosecutor specifically stated that the touching was done without the victim's consent (R. 82), a statement that could be deemed to have put the defendant on notice of the element of consent. But the statement was fleeting, a single line in the course of a factual recitation, with no information identifying it as an essential element of the crime. We will not assume this brief reference put the defendant on notice as to indictments other than 91-3921-008.

this manner could be construed as "indecent" -- a proposition of which we are wary -- the defendant never admitted to a lack of consent. Rather, he asserted that although the victim was "nervous . . . . he wanted to hang around, and then he massaged my shoulders while I was at the computer system. . . . [T]here was no indecent -- I didn't -- I didn't grab his penis or anything like that. That's nonsense." (R. 73-74) The defendant shall be allowed to withdraw his guilty plea to this offense.

Regarding indictment 91-3921-010, the prosecutor stated that the defendant would touch the victim's penis over his clothing. The defendant protested, saying, "It wasn't quite that way, Your Honor. . . . I had a pool table in the facility,[6] and most of them were playing pool, and I used to joke with them. I used to poke them or pinch them or something when they were taking a shot. For those things . . . it wasn't intended in an evil way at all." (R. 66) In short, the defendant's admission that he touched the victim -- or several of the victims -- while the victim was playing pool makes a lack of consent apparent. Common sense dictates that the circumstances were not such as to make possible any inference other than that the touching was done

---

[6] The defendant operated a music studio.

8

without the victim's consent.[7]  This guilty plea was valid.[8]

As to indictment 91-3921-008, the prosecutor stated that the defendant would touch the victim's penis and buttocks on "numerous occasions" over the victim's clothes, and would also try to pull down the victim's pants, "and those things were done without [the victim's] consent."  (R. 82)  The defendant, when asked if he would like to make any corrections to the prosecutor's statement, added only, "Well, I did indecently touch him, I guess.  I pinched him on the buttocks when he was playing pool."  (R. 82)  The judge asked the defendant if he had anything else to add; the defendant replied he did not.

The statement by the prosecutor, coupled with the defendant's own admission to an indecent touching, sufficiently established the elements of indecent assault and battery.  While the defendant did not specifically affirm that the act was done without the victim's consent, the prosecutor had unequivocally

---

[7] Further, though the defendant never expressly admitted to touching the victim's penis, it is apparent from the transcript that he accepted the prosecutor's statement that he indecently touched the victim.  His quibble was with the prosecutor's statement that the defendant would molest the victim while they were alone in the defendant's office.

[8] One could extrapolate from the defendant's statement that he indecently, and without consent, touched several, or even all of the victims.  But the defendant made this statement in the course of discussions pertaining to indictment 91-3921-010, and he does not identify by name or other means any other person whom he may have touched in this manner.  Therefore, to apply the defendant's statement to the other indictments would be patently unfair.

stated it was without the victim's consent, and the defendant,
despite making assertions of his own, did not contest the absence
of consent. This is not a case where a defendant merely fails to
acknowledge a prosecutor's recitation; here, the defendant took
an active role in the colloquy. In these circumstances, the
defendant's addition to one aspect of the prosecutor's recitation
can logically be deemed an admission to the other elements as
stated by the prosecutor.

(iii). <u>Assault with intent to rape a child</u>. The
defendant claims that all four of his guilty pleas to assault
with intent to rape a child were invalid. For the purpose of
framework, even a consensual "assault" with intent to have
intercourse with a child under the age of sixteen is "attempted
statutory rape," <u>Commonwealth</u> v. <u>Burke</u>, 390 Mass. 480, 486
(1983), that is to say, an attempt to have natural or unnatural
sexual intercourse with a person under the age of sixteen.

Regarding indictment number 91-3921-006, the defendant
admitted that over a period of approximately six months, he would
grab the victim's penis over his clothing, and on one occasion,
offered the victim money if the victim would allow the defendant
to perform oral sex. The victim refused. In short, the
defendant admitted to assaulting the victim -- consensually or
otherwise -- by "grab[bing]" his penis, and that he did so with
the intent to have "unnatural sexual intercourse," G. L. c. 265,

10

§ 23, with the fourteen year old victim.  The defendant's citation to Commonwealth v. Dunne, 394 Mass. 10, 20 n.19 (1985), for the proposition that a state of mind desirous of intercourse is not sufficient to establish intent to rape, is of little use here.  This is because the defendant was not merely "desirous" of intercourse -- he attempted to bring about such intercourse through his grabbing of the victim, and through his offering of money to the victim.  Implicit, but still clear, in the recitation is the fact that had the victim acquiesced, the defendant would indeed have performed oral sex.  Therefore, the defendant's intent was adequately demonstrated.

Turning our attention to indictment number 91-3663, the prosecutor stated that the defendant asked the victim to massage him in his groin and thigh area.  The defendant then began to touch the victim's penis over and under his clothing, and took the victim's pants down several times in order to touch the victim's penis.  The defendant offered money to the victim if the victim would allow the defendant to perform oral sex on him.  The victim stated that he was nervous and scared, and continually told the defendant to stop.  For his part, the defendant contradicted the prosecutor's statement that the defendant had pulled down the victim's pants, saying the victim had pulled them down himself.

Whatever the case, the defendant's admissions show that he

11

touched the private areas of an unwilling victim, and offered money in exchange for intercourse. This conduct establishes assault with intent to rape.

As to indictment number 91-3921-005, the defendant admitted conduct nearly identical to that of indictment number 91-3662, *infra*, that is, he "proposed having a sexual act with [the victim] in exchange for money, and . . . subsequent to that [he] did begin to tickle [the victim], and that tickling was with the thought that that might lead to the sexual relationship." (R. 84)

The defendant argues that the terms "sexual act" or "sexual relationship" can have different meanings, and do not adequately convey natural or unnatural sexual intercourse as required by the relevant statute. Critically, though, the "sexual relationship" in question had been explicated earlier in the plea colloquy. The prosecutor had explained the circumstances of the defendant's attempted rape of this victim, including the defendant's "touch" of the victim and his offer of $1,000 to perform oral sex on the victim. The defendant, upon query by the judge, stated that "it was more of an accidental touching." (R. 68-70) This dispute resulted in some discussion as to whether a proper guilty plea required the touching be intentional, which, in turn, resulted in the defendant's admission to tickling in order to bring about a "sexual act" or "sexual relationship."

12

In short, the defendant knew he was pleading guilty to the crime of assault with intent to rape a child; he knew the Commonwealth alleged he had touched the victim, and offered to pay him $1,000 to perform oral sex; he disputed only the characterization of the touch that preceded the offer for oral sex, arguing that it was an accident; and finally, he admitted to tickling the victim in order to bring about a sexual act or sexual relationship. In these circumstances, it would defy common sense to conclude that the defendant did not know that the crime to which he was pleading consisted of an attempt to have natural or unnatural sexual intercourse with a child.[9] The guilty plea was valid.

A similar analysis applies to indictment number 91-3662, relative to which the defendant ultimately admitted he tickled the nine year old victim with the thought that the tickling would ultimately lead to the possibility that the victim would agree to commit a sexual act. (R. 84) Further, after the judge had discussed the conduct pertaining to indictment 91-3921-005, he asked the defendant, with respect to indictment 91-3662, "is that the same situation?" The defendant answered, "yes." For the

---

[9] Simply stated, the fact that the judge chose to use the less explicit words, "sexual act" and "sexual relationship" to refer to allegations that had already been discussed does not make reasonable a conclusion that the defendant did not have an adequate understanding of the elements of the crime to which he was pleading guilty.

13

reasons stated with respect to indictment 91-3921-005, this admission is adequate to establish assault with intent to rape a child.

A final observation is appropriate. Of the guilty pleas that were intelligently made, many were barely so. At the same time, given the complexity of the plea hearing -- a defendant pleading guilty to fifteen indictments, with numerous others being placed on file -- we do not fault the judge, the prosecutor, or defense counsel for the frailties inherent in the plea colloquy. We note, however, that the difficulties we have identified could have been avoided had the relevant actors adequately explained in open court the elements of the crimes to which the defendant was pleading guilty. In such a case, any omissions in the prosecutor's recitation, and even the defendant's vacillating acceptance of same, would have been rendered irrelevant. See Commonwealth v. Nikas, 431 Mass. 453, 456-459 (2000).

In sum, with respect to indictments 92-615-003, 91-3921-009, 91-3921-011, 91-3921-012, and 91-3921-007, the order denying the defendant's motion to withdraw his guilty pleas and for a new trial is reversed, the judgments are reversed, and the findings of guilty are set aside. As to all other indictments, the order denying the defendant's motion to withdraw his guilty pleas and

14

for a new trial is affirmed.

                          So ordered.

                          By the Court (Laurence, Brown
                              & Berry, JJ.),

                    First Assistant Clerk

Entered:   March 23, 2004.

15

# Supreme Judicial Court for the Commonwealth of Massachusetts
## One Beacon Street, Third Floor, Boston, Massachusetts 02108
### (617) 557-1020

Edward B. Gaffney, Esquire
P.O. Box 5092
Wayland, MA 01778

RE:  Docket No. FAR-14040

**COMMONWEALTH**
**vs.**
**WALTER HOWARD**

     Middlesex Superior Court No. MICR1991-03660  MICR1991-03662,
03663, 03921, 1992-00615, 01080.
     A.C. No. 2003-P-0056

### NOTICE OF DENIAL OF F.A.R. APPLICATION

     Please take note that on 05/03/04, the above-

captioned Application for Further Appellate Review was denied.

                              Susan Mellen, Clerk

Dated: May 3, 2004

To:  James W. Sahakian, A.D.A.
     Edward B. Gaffney, Esquire

**SUPREME JUDICIAL COURT FOR THE COMMONWEALTH**
**ONE BEACON STREET, 3RD FLOOR**
**BOSTON, MASSACHUSETTS 02108**
TEL: (617) 557-1020
FAX: (617) 557-1145

SUSAN MELLEN, CLERK

June 10, 2004

Mr. Walter Howard
BTC
30 Administration Road
Bridgewater MA 02324

Re:  FAR-14040
     Commonwealth v. Walter Howard

Dear Mr. Howard:

     Your application for further appellate review was denied by
the full court.  See Mass. R. App. P. 27.1.  There is no further
appeal from that denial, unless you wish to file a request for
reconsideration for reasons stated.

     Enclosed please find copies of the docket sheet and the
order in this matter.

                         Very truly yours,

                         Susan Mellen

                         Susan Mellen, Clerk

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT


COMMONWEALTH OF MASSACHUSETTS,

V

WALTER HOWARD, APPELLANT,
PRO SE.


Application for Further Appellate Review #: 14040.


JUNE 16th, 2004.


Dear Clerk Mellen;

    Enclosed is a request for reconsideration of the denial of my
request for further appellate review.
    Would you kindly docket this request, and, if there is anything
further I need to do, then, please let me know.  I am acting pro
se in this matter, and it's very unfortunate that counsel in this
matter chose to act/inact as he did.

    If this request is too late, or beyond some statutrory time
limit, then please let me know.  I will then prepare a §2254 pet-
ition for habeas corpus in the first disrict.  I attempted to have
all of my "provable" legal issues addressed by counsel, but was
denied effective assistance.
    I am no longer serving a prison sentence, but have remained a
123A civil commitment pre trial "detainee" for over 4 years.  This
injustice is getting old and frustrating.
    Thank you for your time and consideration in this matter,

                              Respectfully,

                              Walter Howard, Pro Se.
                              30 Administration Rd.
                              Bridgewater, Ma. 02324.


cc:  Mark Gillis, esq.
     David Hirsch, esq.
     File.

(1)

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT

APPLICATION FOR FURTHER APPELLATE
REVIEW #:  <u>14040</u>

COMMONWEALTH OF MASSACHUSETTS,

vs.

WALTER HOWARD, APPELLANT.

**PRO SE REQUEST FOR RECONSIDERATION OF**
**APPLICATION FOR FURTHER APPELLATE REVIEW**

Now comes the appellant, Walter Howard, acting pro se
at this time, who requests that this honorable court re-
consider its denial of his application for further appell-
ate review.  This pro se defendant makes this request for
the following reasons:

1)  The defendant/appellant's counsel made substantial
    errors in the presentation of this appellants issues
    concerning his unknowing and involuntary pleas.  The
    defendant's appellate counsel ommitted numerous issues
    the defendant request he address, which has proven to
    have been to the detriment of this defendant's appeal
    for a new trial.  The latest evidence of counsel'd
    ommissions are attached hereto as "Exhibit A."

2)  Appellate counsel's errors/ommissions were not only
    by his failure/refusal to include the defendant's
    complaint (and evidence) that he was over medicated
    by mal prescribed mind altering drugs prior to, and
    during the November 25th, 1992 plea change hearing,

but were also due to his failure/refusal to conduct

a "fair reading" of the trial transcripts to uncover

the misapprehensions in the colloquy on pp. 38-39;

which occured as follows:

Q  Has anybody promised you anything to change your
   plea other than what you understand is going to
   be the sentence in this case?

A  No, sir.

Q  And what do you understand that sentence to be.

A  Twelve to fifteen years with eight years to serve.

Q  Right, and then a ten to fifteen on and after, sus-
   pended for ten years.

A  Right, whatever that means. (showing lack of under-
                                             standing)

Q  That means that there will be another sentence that
   will be simply suspended, and you would be placed on
   probation.  If you ever violated a term of that pro-
   bation, then that second sentence would be imposed;
   do you understand that?

A  I understand that now. (which indictaes that I had
                           no knowledge of the addition-
                           al "from and after sentence"
                           prior to the proceedings.)

   The underlined portions above of the interactions be-

tween the court and defendant clearly show, with a fair

interpretation of the dialog considering the defendant's

diminished mental capacity by way of over/mal prescribed

mind altering drugs, that he knew nothing of the from and

after suspended sentence PRIOR to the above dialog, which

should call into question whether the defendant, at that

time, really understood those consequences, and knowingly

and voluntarily chose to plead guilty.  The defendant was

incapacitated enough, mentally, to have been unable to make

autonomous decisions.

(3)

Please see trial transcripts pp. 45-49, and 51-52.

3) Prior to the November 25th, 1992 proceedings, the defend-
ant's counsel; while defendant was over medicated with
mind altering drugs, misled the defendant to believe
that he was pleading guilty to 2 counts of indecent
assault and bettery on a person under 16 (without the
defendant being informed that "lack of consent" was an
essential element of that charge); and 1 count of statut-
ory rape of a person under the age of 16.  Counsel told
the defendant that "all other charges would be dropped."
Defendant's counsel never informed him that matters
would be placed on file, or what "placed on file even
meant."  By this the defendant; while overmedicated by
mind altering drugs and misinformation by counsel, un-
knowingly and involuntarily plead guilty to numerous
offenses he was not guilty of.

4) There were serious mitigating circumstances in this
case that the original defense counsel ommitted from
the record concerning the defendant's mental illness.
Counsel, in this regard also, was seriously ineffective
and incompetant. Counsel misled the defendant to believe
that "child victims never have to testify in court."

5) The Middlesex County District Attorney's Office offer-
ed the defendant (according to counsel) a particular
agreement if he pled guilty.  They offered a 12 to 15
year prison term, with only eight years to serve, and
the balance would be suspended.  However, when the def-
endant agreed (unknowingly) to that prison term and was

in the middle of misapprehended proceedings, the prosec-
utor changed the terms of the plea agreement offer, and
asked the court for a sentence of 20 to 30 years, which
grossly exceeded their offer. (See Transcripts pp. 41-42)
Please see Santabello v New York 404 US @ 262 (1971);
Commonwealth v Benton, 356 Mass. 447-48, 252 N.E.2d 891
(1969); and Commonwealth v Dormandy, 423 Mass. 190, 197,
667 N.E.2d. 832 (1996).  Had the defendant not been indu-
ced by the prosecutor's offer; misinformed by counsel, and
not over medicated by mind altering drugs, he would not
have pled guilty as he did.  Additionally, had counsel
properly explained a "from and after sentence, suspened
with probation," to the defendant, the defendant would
not have pled guilty.  Because the defendant was not
served the indictments, he was not aware of all of the
charges against him.  Considering his mental condition
at that time, he had no way to comprehend the complexity
of what he was facing, and the consequences he would suffer.

6) A reasonable interpretation of the trial transcript pp. 2-
4, will show that as the charges were read, the AGE issue
was ommitted from the reading.  Later on during the recit-
ation of the allegations, only the dates of brith were re-
cited, and not the actual age of the alleged victim. This
caused the defendant to be wrongly convicted by plea of
crimes against a child under the age of 14.  Since the
defendant was somewhat incapacitated, mentally, by mind
altering drugs during the proceedings, he wasn't sharp
enough to detect and correct the numerous subtle errors
made by the prosecutor.  See Transcript pp. 36-38.

7) The handling of this defendant's case, by both the orig-
   inal counsel, and his appellate counsel, was ineffective.

8) In addition to the issues stated herein, as well as all
   of the related issues stated in his "affidavit in support
   of motion for temporary stay of proceedings," the defend-
   ant states there is "new evidence," that he was unable to
   presnt due to his lomg term over medicated state while he
   was incarcerated. Please see Exhibit "A", and the Appeals
   court docket (2003-P-0056) Papers #: 7,8, and 9.

9) The defendant/appellant seeks new trials to correct the
   false and misleading record against him. He has completed
   his prison sentence and had paid his due debt. Had the
   court, counsel, and the prosecution followed normal rules
   of court proceedure, it is doubtful these errors would
   have occured.

Wherefore, the defendant/appellant asks this court for an
   expeditious reconsideration, or a prompt denial so he
   can petition the federal courts. Signed under the pains
   and penalties of perjury this 15th day of June, 2004.

                                    Respectfully Submitted,

                                    Walter Howard, pro se
                                    30 Administration Rd.
                                    Bridgewater, Ma. 02324.